IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MIGDALIA SANTIAGO RODRÍGUEZ | |
| **Plaintiff** | CIVIL. NO. 2011-01128 (DRD) |
| **vs.** | Age Discrimination, ADA |
| SISTEMA SAN JUAN CAPESTRANO | |
| Defendant | |

PLAINTIFF'S OPPOSITION TO MOTION FOR

SUMMARU JUDGEMENT [DOCKET No. 11]


To the Honorable Court:

COME NOW the plaintiff, through the undersigned attorney, and respectfully stay and pray:

**A.   Introduction**

Defendant filed a Motion for Summary Judgment requesting the dismissal of all the plaintiff's claims. [Docket 11]

However, defendant failed to put forward a nondiscrimination reason for plaintiff's demotion. Defendant rests only in generalities and conclusions to support its statements that plaintiff breached her duties as General Supervisor. However,

1

there is no document or statements that support the conclusion that the plaintiff did not comply with her duties. Because this failure in production, defendant fails to rebut the presumption that the plaintiff was discriminated because her age and her health condition. *Mesnick v. General Elec. Co.*, 950 F2d. 816, 823 (1st Cir. 1991), cert. Denied, 504 U.S. 985 (1991). *Smith v.F.W. Morse & Co., Inc,* 421

Plaintiff was replaced by a younger employee, and she was demoted after informing that she would suffer a major surgery. Therefore, plaintiff has a valid action under ADEA and ADA.

**B.    Facts**

There is no controversy that Plaintiff Mrs. Migdalia Santiago was born on July 23, 1959. Plaintiff was hired by the defendant as General Supervisor. See defendant proposed facts.

Plaintiff has a master's degree in hospital administration and a second degree in mental health. See defendant's proposed facts. Plaintiff also is a nursing professor of the Caribbean University. Se plaintiff proposed fact 1.

Defendant's had three (3) work shifts. Plaintiff's  duties were to supervise the personal that she was in charge during their shift, when the administrative personal was gone, she was in charge. Plaintiff's shift was from tree to eleven. Plaintiff only had to reports incidents on her that happened under her shit. See plaintiff proposed facts 2, 5 17.

Miguel Rodriguez, also a General Supervisor, was in charge of the seven (7) to three (3) shift. This shift was before plaintiff's work schedule. See plaintiff's proposed facts 8 and 20.

On November 21, 2009, a per diem nurse named Maritza Bonilla vaccinated the personal of seven to three shift, under Miguel Rodríguez' supervision.

Plaintiff did not have knowledge of such inoculation process. Neither she could prevent the incident, stop it or report the incident to her supervisors. Was the responsibility of Miguel Rodriguez, the person in charge of the seven to three shift, to take the appropriate measures and to report it if necessary. See plaintiff's proposed facts, 19 to 32.

Early on December 21, 2009, plaintiff reported that she needed a surgery of the thyroid and parathyroid because positive cancer nodules. After she reported this, on December 15, 2012 plaintiff was notified of a demotion for an incident that even did not happen on her shift.

After her demotion, plaintiff was replaced by Lisa Rivera, a younger employee of 38 years old, that the own administration requested the plaintiff to train as General Supervisor. See plaintiff's proposed facts15, 16, and 43

According the evaluations made to the plaintiffs by the employer, of her performance was excellent. See plaintiff's

proposed fact number 42.

**C.    Standard of Review of the Motion for Summary Judgment**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

Once the party moving for summary judgment has asserted that no genuine issue of material fact exists, the party opposing summary judgment has the burden of pointing to "specific facts demonstrating that there is, indeed, a trial worthy issue. Council of Insurance Agents & Brokers v. Juarbe Jiménez, opinion of March 30, 2006, No. 05-2607 (1st Circ. 2006); Calero-Cerezo v. U.S. Dep't. of Justice,355 F.3d 6, 19 (1st Cir. 2004).

In considering a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his

favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## C.   ADEA Standard of Review

"The pertinent provision of ADEA is comparatively straightforward: it is unlawful for an employer to refuse to hire, or to discharge or to otherwise discriminate against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). Protection is limited to those 40 years old or older, id. at § 631(a). An applicant or employee who is aggrieved by an adverse job action taken against him or her because of age can bring a civil action under ADEA and can seek legal or equitable relief. Id. at § 626(c)(1)." . Melendez-Arroyo v. Cutler-Hammer De P.R. Co., Inc., 273 F.3d 30, 33 (1st Cir. 2001).

The plaintiff must initially make a prima facie showing of discrimination. McDonnell Douglas Corp. V. Green, 411 US 792, 802 (1973); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)  The burden of making out a prima facie case is "not onerous." Texas Dept. Of Community Affairs v. Burdine, 450 US 248, 252 (1981); see also Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir.) (the prima facie showing is "quite easy to meet"), cert. denied, 112 S. Ct. 181 (1991).  In an age discrimination case, this requires a demonstration that (i) the plaintiff was over the age of forty,

(ii) his work was sufficient to meet his employer's legitimate expectations, (iii) his employer took adverse action against him, and (iv) the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills.  See, e.g., Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1110 (1st Cir. 1989); Menzel v. Western Auto Supply Co., 848 F.2d 327, 328 (1st Cir. 1988). This showing gives rise to an inference that the employer discriminated due to the plaintiff's advanced years.  See Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988).  Mesnick v. General Electric Co., 950 F.2d 816, (1st Cir. 1991).

Establishing a prima facie case creates a presumption that the employer unlawfully discriminated and shifts the burden of production to the defendant. At this second stage, the employer must rebut the inference of age discrimination by articulating some legitimate, nondiscriminatory reason for the employment action.  If the employer advances the required showing, the inference originally generated by the prima facie case drops from sight.  In that event, it falls upon the plaintiff (who bears the burden of persuasion throughout) to show that the employer's alleged justification is a mere pretext for age discrimination.  To prevail at this third stage, the plaintiff must ordinarily do more than impugn the legitimacy

of the employer's asserted justification; he must also adduce evidence "of the employer's discriminatory animus." Vega v. Kodak Caribbean, 3. F.3d 476, 479 (1st Cir. 1993).

At the final stage, the plaintiff is required to show, unassisted by the original inference of discrimination, that the employer's proffered reason is actually a pretext for discrimination of the type alleged. See Furnco Constr. Corp. v. Waters, 438 U.S. 567, 578 (1978); McDonnell Douglas, 411 U.S. at 805; Villanueva, 930 F.2d at 127-28; Medina-Munoz, 896 F.2d at 9; Dea , 810 F.2d at 15-16. In assessing pretext, a court's focus must be on the perception of the decision maker, that is, whether the employer believed its stated reason to be credible. Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986). It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination. Medina-Munoz, 896 F.2d at 9; see also Furnco Construction Corp. V. Waters, 438 US 567, 578 (1978); Villanueva , 930 F.2d at 127-28. Mesnick v. General Electric Co., 950 F.2d 816, (1st Cir. 1991).

Because the resultant burden can be carried without direct proof of discrimination, requiring the plaintiff to show that the employer's reason is a pretext for age discrimination

comports with the principle that a plaintiff should not be required to produce smoking-gun evidence before prevailing in a discrimination suit. There are many veins of circumstantial evidence that may be mined by a plaintiff to this end. These include, but are by no means limited to, statistical evidence showing disparate treatment by the employer of members of the protected class, see, e.g., Olivera v. Nestle Puerto Rico, Inc ., 922 F.2d 43, 49 (1st Cir. 1990), comments by decision makers which denigrate those over forty, see, e.g., Siegel v. Alpha Wire Corp. , 894 F.2d 50, 55 (3d Cir.), cert. denied, 110 S. Ct. 2588 (1990), the incidence of differential treatment in the workplace, see, e.g., *McDonnell Douglas* , 411 U.S. at 804-05, and the deployment of younger replacements, see, e.g., *Hebert, 872 F.2d at 1115* . Above all, courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff. Olivera, 922 F.2d at 50. Mesnick v. General Electric Co., 950 F.2d 816, (1st Cir. 1991).

An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace," Burlington Northern, 548 U.S. at 61-62, and typically involves discrete changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant

change in benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998); accord <u>Gu v. Boston Police Dep't</u>, 312 F.3d 6, 14 (1st Cir. 2002) ("To be adverse, an action must materially change the conditions of plaintiffs' employ.". A materially adverse change in the terms and conditions of employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." <u>Marrero v. Goya of P.R., Inc.,</u> 304 F.3d 7, 23 (1st Cir. 2002).

D.    **ADA Satandard of Review**

The ADA requires covered entities, including private employers, to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship."45 U.S.C. § 12112 (b)(5)(A) (1994 ed.); see also §12111(2) ("The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee"). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." §12111(8). In turn, a "disability" is:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment." §12102 (2). See <u>Toyota Motor v. Williams</u>, 534 U.S. 184 (2002).

"There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual — it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." <u>Bayley v. Georgia-Pacific Corporation</u>, 306 F.3d 1162 (2002).

A plaintiff claiming that he is "regarded" as disabled cannot merely show that his employer perceived him as *somehow* disabled; rather, he must prove that the employer regarded him

as disabled within the meaning of the ADA. Plaintiff must show that he was perceived as being unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities. *See* 29 C.F.R § 1630.2(j)(3)(i). Bayley v. Georgia-Pacific Corporation, 306 F.3d 1162 (2002).

### E. Discussion

### i. Age Discrimination

The defendant has not proffered any nondiscriminatory reasons regarding the actions that it took against the plaintiff. Therefore, the defendant fails to rebut the presumption that plaintiff's demotion was discriminatory.

There isn't in the record any document or statement showing that defendant made the allege investigation regarding Maritza Bonilla's inoculation process, the allege excuse for plaintiff's demotion.

Except defendant's blunt and unsupported allegations that plaintiff failed to comply with defendant's employment rules, there is not a single piece of document in support of such averment.

The prima facie case method was never intended to be rigid, mechanistic or ritualistic. U.S. Postal Service Bd. Of Govs. V. Aikens, 460 US 711, 715 (1982). Methods of presenting a prima

facie case are not fixed; they are flexible and depend to a large degree upon the employment situation. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (11th Cir. 1984).

The next burden - articulating a legitimate, nondiscrimatoy reason for the adverse employment decision - belongs to the defendant. This entails only a burden of production, not a burden of persuasion the task of proving discrimination remains the claimant's at all times. Once such a reason emerges, the inference raised by the prima facie case dissolves, and the last transfer of burden occurs. <u>Mesnick v. General Elec. Co</u>., 950 F2d. 816, 823 (1st Cir. 1991), cert. Denied, 504 U.S. 985 (1991). <u>Smith v.F.W. Morse & Co., Inc</u>, 421 . At this second stage, the employer must rebut the inference of age discrimination by articulating some legitimate, nondiscriminatory reason for the employment action. <u>Vega v. Kodak Caribbean</u>, 3. F.3d 476, 479 (1st Cir. 1993).

"By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable "presumption that the employer unlawfully discriminated against" him. **To rebut this presumption, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." In other words, the defendant must "produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason."**

See United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714, (1983).

The defendant doesn't articulate any reason for the actions it took against the plaintiff. The record is devoid of documents or evidences that support defendant's actions against the plaintiff. Supposedly defendant made an investigation, however such investigation, the persons interviewed, the declarations obtained, memorandums and documents, never has been provided. There isn't in the record of the Court what employer's norms or regulations the plaintiff breached.

This create a void regarding the allege justification that cannot rebut the initial presumption in plaintiff's favor.

Moreover, the record shows that plaintiff's shift was from three to eleven. Never there was an inoculation process authorized by the plaintiff in her work shift. Neither had she had the duty or obligation to reports incidents that occurred under the supervision of another General Supervisor.

All the alleged events superficially stated in the demotion letter, occurred in the seven to thee shift, when the plaintiff was not present in the Hospital. Because plaintiff was not there, she could not stop the inoculation process or report it.

Therefore, plaintiff's demotion was unjustified. The allege reason for plaintiff's demotion is merely sham intended to cover up the employer's real motive: age discrimination.

*Medina-Munoz,* supra.

In order to make a prima case of age discrimination, it is required a demonstration that (i) the plaintiff was over the age of forty, (ii) his work was sufficient to meet his employer's legitimate expectations, (iii) his employer took adverse action against him, and (iv) the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. See, e.g., Hebert v. Mohawk Rubber Co., 872 F.2d 1104, 1110 (1st Cir. 1989); *Menzel v. Western Auto Supply Co.,* 848 F.2d 327, 328 (1st Cir. 1988).

Defendant claims that plaintiff fails in the second and third prong. That is, (ii) that she did not met the employer's legitimate exceptions (iii) and that the employer did not take an adverse action against her.

This is allegations are contradicted by plaintiff's performance evaluation, for the period of January to September, 2009. Plaintiff was evaluated as an excellent employee. This evaluation was signed on November 24, 2011. Therefore, she not only was complying with employer's requirements, she was exceeding them.

Secondly, the employer took an adverse action against the plaintiff when demoted her from General Supervisor to nurse, and replaced her with a younger employee. Moreover, the demotion

implied shift rotations, a decrease of salary, and a humiliation to her because her numerous degrees.  See Exhibit I, plaintiff's deposition, page 37, lines 22-25, page 38, lines 1-11.

Therefore, plaintiffs met all the conditions for a prima facie case of discrimination because her age.

Finally, is irrelevant that the employer has other employees of the protected category.  Although the ADEA limits its protection to those who are 40 or older, it prohibits discrimination against those protected employees on the basis of age, not class membership.  That one member of the protected class lost out to another member is irrelevant, so long as he lost out because of his age. The latter is more reliably indicated by the fact that his replacement was substantially younger than by the fact that his replacement was not a member of the protected class.  *O'Connor v. Consolidated Coin Carterers Corp.*, 517 U.S. 305 (1996).

*ii.  ADA discrimination*

Defendant claims that plaintiff failed to prove a ADA claim because she was not disable.  Plaintiff informed the defendant that present ADA Claims entertains to the third category of persons protected by the state.  That is, that she was regarded as disable because her condition of positive cancer nodules in the thyroids.

The ADA's definition of "handicapped individual to include not only those who are actually physically impaired, but also those who are regarded as impaired and who, as a result, are substantially limited in a major life activity, Congress acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairment*." School Bd. of Nassau County v. Arline*, 480 U.S. 273 (1987)

Even those who suffer or have recovered from such noninfectious diseases as epilepsy or cancer have faced discrimination based on the irrational fear that they might be contagious. The Act is carefully structured to replace such reflexive reactions to actual or perceived handicaps with actions based on reasoned and medically sound judgments: the definition of "handicapped individual" is broad, but only those individuals who are both handicapped *and* otherwise qualified are eligible for relief. The fact that *some* persons who have contagious diseases may pose a serious health threat to others under certain circumstances does not justify excluding from the coverage of the Act *all* persons with actual or perceived contagious diseases. Such exclusion would mean that those accused of being contagious would never have the opportunity to have their condition evaluated in light of medical evidence and

a determination made as to whether they were "otherwise qualified." Rather, they would be vulnerable to discrimination on the basis of mythology -- precisely the type of injury Congress sought to prevent.   Arline, 480 U. S. 285-285.

Plaintiff's conditions is one of those that has been subject of discrimination because myths and irrational fears.   As soon Plaintiff informed to defendant her disease, she was demoted from supervisor to floor nurse.   Under the circumstances of the present case, there is an extreme temporal proximity between her report and the demotion.

"Close temporal proximity between two events may give rise to an inference of causal connection.   Thus, "protected conduct closely followed by adverse action may justify an inference of retaliatory motive." Hodgens vs. General Dynamics, 144 F.3d 151 (1st Circ. 1998).

Moreover, plaintiff was perceived by the employer that she was unable to work because was possible that she could loss her voice.

### iii. Constructive Discharge

"Constructive discharge is a label for "treatment so hostile or degrading that no reasonable employee would tolerate

continuing in the position. The standard is an objective one: the conditions must be so difficult or unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign. Properly applied, this standard "does not guarantee a workplace free of the usual ebb and flow of power relations and inter-office politics." Rather, the plaintiff must establish that working conditions were so unpleasant that staying on the job while seeking redress would have been intolerable." (internal citations omitted) <u>Leavitt v. Wal-Mart Stores, Inc.</u>, 74 Fed. Appx. 66 (1st Circ. 2003).

A constructive discharge can arise from, among other things, reassignment with significantly diminished job responsibilities, a decision causing a significant change in benefits. <u>Leavitt v. Wal-Mart Stores, Inc.</u>, 74 Fed. Appx. 66 (1st Circ. 2003).

The transfer from a position with supervisory responsibility, to a nonsupervisory position carrying a lower salary, generated a trial worthy issue as to whether defendants' adverse employment decision constituted an actionable demotion. <u>Jirau Bernal v. Agrait</u>, 37 F.3d 1 (1st Circ. 1994).


The plaintiff was hired as the defendant as General Supervisor, not as nurse. She holds two master degrees, one in hospital administration, and has being a nurses' teacher for several years. She was demoted from her post as supervisor, and

replaced by a person with less experience and capacity than her. Also, with the demotion, plaintiff would have to make rotatory shifts and will have a reduction of her salary from $22 per hour to $13 dollars per hour.   Furthermore, she was demoted because facts that happened under the watch of another supervisor.

All this circumstance would force a reasonable person to quite the job and are trial worthy regarding the constructive discharge claim. <u>Jirau Bernal v. Agrait</u>, supra.

### iv.  State Law

The Honorable Court has supplemental jurisdiction over the fallowing Puerto Rico's state law claims: the Constitution of the Commonwealth of Puerto Rico; Law number 80 of May 30, 1976 as amended law 80 of May 30, 1976, as amended, Law No. 100 of June 30, 1959, as amended; Law No. 44 of July 2, 1985 ;  and Art. 1802 of the Civil Code of Puerto Rico; Law No. 115 of December 20, 1991.

An age discrimination case action brought under Law 100 differs from one brought under the ADEA in two significant respects.  First, in an action brought under the ADEA, the plaintiff retains the burden of proof throughout the trial; in an action brought under Law 100, in contrast, the burden of proof shifts to the defendant once the plaintiff has established a prima facie case.  Second, Law 100 permits a plaintiff, upon appropriate proof, to recover damages for emotional distress (or

"mental and moral suffering," to use the term employed by the district court and the parties).   Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 723 (1st Cir. 1994).

As discussed above, defendant has not produced evidence regarding that plaintiff's demotion was not related to a discriminatory intent.   Therefore, under Law 100, neither defendant can comply with the burden of persuasion required under Law 100.

Under local law, in claims by discriminatory dismissal, the plaintiff must prove in the first turn, that tends to establish, for example, that: i) he belongs to the class protected by the statute; or ii) that he was qualified for the job; either iii) that was dismissed, or iv) that was replaced by a person outside of the protected class; this is, some fact that locates it within the modality of discrimination under which he claims. It is necessary to notice that the employee does not have to prove all and each one of these elements, since, thus requiring him to do it so, would be require the fulfillment of a procedural obligation that does not correspond to carry out when claiming for discrimination under the disposition of Law No. 100 of 30 of June of 1959.   The standard of proof under the Law No. 100 and Law 80 is more flexible than under Title VII or ADEA. See Díaz Fontánez v. Wyndham Hotel Corp., 155 PR Decisions 364 (2001).

Clearly plaintiff met all of this elements:   she belonged

to the protected class; she was qualified for the job, as shown by her preparation and evaluations; she was demoted and replaced by a younger employee. Therefore, plaintiff complies with all the elements of Law 100.

The P.R. Supreme Court has recognized that the exclusiveness of the remedy provided by Act 80 does not extend to other specific situations in labor matters where the worker is protected by special social legislation. In these cases, the remedy provided is superior to the one available to the worker discharged without just cause... If it should occur, the remedy, as a rule, is reinstatement, back pay and, in some cases, damages stemming from the discharge and, in certain cases, an equal sum as penalty." Vélez Rodríguez v. Pueblo International, 135 D.P.R. 500, 512-513 (1994). If plaintiff was unable to prove that her dismissal was due to discrimination, her only remedy would be an unjust dismissal claim under Act 80. See also, Martínez Mora v. Acana Corporation, 157 DPR 730 (2002).

In the present case, as stated above plaintiff was constructively discharged from her employment. Not only plaintiff was demoted, also defendant substantially reduced her salary. Therefore, plaintiff has a valid claim under Law 80.

Regarding Law 44, plainstiff restates her discussion regarding ADA.

In the alternative, plaintiff request to the Honorable

Court to not exercise its jurisdiction under the State Law claims.

WHERFORE the plaintiff request to the Honorable to deny defendant's requests for summary judgment.   [Docket No. 11].

Respectfully filled.

**CERTIFICATE OF SERVICE:** I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, whom would notify to the attorneys of record.

May 29, 2011.

s/ Pedro J. Landrau López

**Pedro J. Landrau López**
**USDC No. 220812**
**landrau@email.com**
**pjlandrau@email.com**
**Attorney for Plaintiff**
**P.O. Box 29407**
**San Juan, Puerto Rico 00929-0407**
**Tel.(787) 636-0135**
**Fax. (787) 768-6051**