UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGDALIA SANTIAGO RODRIGUEZ,

Plaintiff(s),

SISTEMA SAN JUAN CAPESTRANO,

Defendant(s).

Civil No. 11-1128 (DRD)

**AMENDED OPINION AND ORDER
ADOPTING REPORT AND RECOMMENDATION**

Pending before the Court are: (a) *Defendant's Motion For Summary Judgment And Memorandum Of Law In Support Thereof,* Docket No. 11; (b) plaintiff's response, Docket No. 16; (c) *Defendant's Reply To Plaintiff's Opposition To Motion For Summary Judgment,* Docket No. 23; (d) *Report and Recommendation* issued by the Magistrate Judge Silvia Carreño-Coll (hereinafter "Magistrate Judge"). The *Report and Recommendation* concluded that the federal claims be dismissed with prejudice. The state law claims were not dismissed, as the Magistrate Judge concluded that she did not wish "to undermine any jurisdictional basis for state-law claims." Docket No. 33, page 12. The Court interprets that the state claims were to be dismissed without prejudice. For the reasons set forth below, the Magistrate Judge's *Report and Recommendation* is adopted *in toto*, as supplement herein.

**Factual and Procedural Background**

Plaintiff Migdalia Santiago Rodríguez (hereinafter "Santiago" or "plaintiff") alleges in the *Complaint* several employment violations under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*., and the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*., and constructive discharge. Plaintiff also seeks compensatory damages, lost wages

and benefits, past and future, including loss of Social Security benefits triggered by plaintiff's supervisors on the ground of plaintiff's filing of an administrative claim with the Equal Employment Opportunities Commission ("EEOC"), attorneys fees and costs.

Defendant Sistema San Juan Capestrano ("Capestrano" or "hospital" or "defendant") moved for summary judgment and the dismissal of the instant action with prejudice based on the fact that the plaintiff was unable to show a disability under the ADA, and a discrimination case under the ADEA, Docket No. 11. Plaintiff generally opposed on the grounds that the tests used by the defendant under the ADA and the ADEA are incorrect, as well as their applicability to the facts of the instant complaint. For example, plaintiff alleges that the defendant failed to apply the prima facie test showing discrimination under the ADEA as per *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which is the applicable test in cases under ADEA. *See* Docket No. 16, pages 11-15. Plaintiff further alleges that she is "regarded as disabled" under the ADA "because [of] her condition of positive cancer nodules on the thyroids." *Id.* at page 15. Defendant replied that plaintiff's opposition is "proposing new additional facts and claiming that Defendant failed to proffer a non-discriminatory reason for Plaintiff's demotion." *See* Docket No. 23. "Plaintiff argues that Defendant did not rebut the presumptions of discrimination and provided 'blunt and unsupported allegations.'" *Id.* "Plaintiff's arguments in opposition fall flat." *Id.*

The instant case was referred to the Magistrate Judge for report and recommendation. *See* Docket entries No. 31 and 32. The Magistrate Judge entered the *Report and Recommendation* on January 14, 2013, Docket No. 33. Pursuant to the *Order Referring Case*, Docket No. 31, the parties were granted five business days to file any objections, that is, January 22, 2013. The record shows that plaintiff opposed the *Report and Recommendation* on January 28, 2013, Docket No. 34. The

Court finds that plaintiff's opposition is tardy and was filed without leave of Court. Defendant filed a reply on February 7, 2013, Docket No. 35 without leave of Court. *See* Docket No. 33, pages 12-13. The Court is cognizant that the *Report and Recommendation* provides the parties fourteen days to object, however, this provision is contrary to the Court's *Order*, Docket No. 31.  In any event, the Court has reviewed plaintiff's tardy objection, as well as defendant's reply, and finds that plaintiff's objections are merely a rehash of the arguments raised in the opposition to the motion for summary judgment. Hence, plaintiff's tardy objection will not alter the Court's analysis nor the filing ruling.

## Standard of Review

The district court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B); Rule 72(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); Local Civil Rule 72(a) of the Local Rules of the United States District Court for the District of Puerto Rico ("L.Civ.R.").

"Absent objection, ... [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F. 2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court, and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F. 2d 22, 30-31 (1st Cir. 1992).

In the instant case, plaintiff's objections to the Magistrate Judge's *Report and Recommendation* were filed tardy. Hence, the Court will consider the Magistrate Judge's *Report and Recommendation* as being unopposed. Thus, in order to accept the unopposed *Report and Recommendation*, the Court needs only satisfy itself by ascertaining that there is no "plain error" on

the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir. 1996)(*en banc*)(extending the deferential "plain error" standard of review to the unobjected legal conclusions of a magistrate judge); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)(*en banc*)(appeal from district court's acceptance of unobjected findings of magistrate judge reviewed for "plain error"); *Nogueras-Cartagena v. United States*, 172 F.Supp.2d 296, 305 (D.P.R. 2001)("Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding Fed.R.Civ.P 72(b)); *Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa. 1990)("when no objections are filed, the district court need only review the record for plain error").

After a careful review of the Magistrate Judge's *Report and Recommendation*, the Court finds no "plain error" and agrees with the Magistrate Judge's conclusions, as supplemented herein. As stated above, the Court's review of plaintiff's tardy objections do not change the final ruling of the Court, as the Court finds that the arguments were properly address by plaintiff prior thereto in a filing, and the Court address then in this *Opinion and Order*.

**Analysis**

A review and in absence of plain error, the Court hereby accepts, adopts and incorporates by reference, the Magistrate Judge's *Report and Recommendation,* Docket No. 33.

The Magistrate Judge found that the following facts were uncontested. Plaintiff was hired by the defendant in June 2006 as a general supervisory nurse. Plaintiff was 45 years old at the time she was hired by Sistema San Juan Capestrano. *See Report and Recommendation*, Docket No. 33, page 2. On November 21, 2009, an incident occurred at San Juan Capestrano, consisting of a per diem nurse's administration of flu shots to some of defendant's employees without authorization.

*Id.* at page 3. This incident triggered an investigation by the defendant in early December 2009, which included plaintiff's failure to inform the incident to the defendant's administration. *Id.* Plaintiff was interviewed by the defendant's department of human resources, and confronted with the question of whether or not she informed the incident to the defendant's administration. *Id., see also* Docket No. 11-2, at pages 34-36. During plaintiff's meeting with the department of human resources, plaintiff informed that she had scheduled an emergency surgery to remove her thyroid for December 21, 2009. *See Report and Recommendation*, Docket No. 33, page 3.

Plaintiff was later notified through defendant's letter dated December 15, 2009, that the investigation has revealed that plaintiff failed to report the November 21, 2009 incident to the administration. Hence, plaintiff would be released from her current position of general supervisory registered nurse, and was to be transferred to the position of general registered nurse effective December 21, 2009.[1] *Id.* at pages 3-4, and Docket No. 11-5, and the certified English translation, Docket No. 14-3.

Plaintiff proceeded with her surgery as scheduled on December 21, 2009, and never returned to work, resigning from the hospital through letter of January 7, 2010 effective January 12, 2010, *see* Docket No. 11-6, and the certified English translation, Docket No. 4. The Court finds that because the language of plaintiff's resignation letter addressed to Mrs. Colón, Clinical Services Director, is critical for plaintiff's claims, the same is cited below:

> This is to inform you that effective January 12, 2010, I resign my position as General Nurse, a position to which I was demoted early in

---

[1] The Court notes that this is not the first time that plaintiff has been interviewed by the defendant's department of human resources, *see* defendant's Employee Corrective Actions Report of July 3, 2009, Docket No. 14-5, regarding plaintiff's frequent absences from work without proper and/or timely notice with her supervisors. No disciplinary action was taken by the defendant at the time.

>December after four years as General Supervisor of the 3-11 shift, the position for which I was hired.
>
>**I wish to reiterate my position that the incident on which you based your decision to demote me was an isolated case of involuntary forgetfulness whereby I did not make the entry in the shift report, in the understanding that, since other supervisors were involved, the hospital administration was aware of and approved the vaccination.**  Also, the person providing the service was not a stranger to the institution, but rather an employee who, at the request of several coworkers, during her free time provides material and equipment to protect other employees, a function she performs on a daily basis as an employee of the Government of Puerto Rico.
>
>Having nothing further to say, I thank you for the opportunity you gave me to work for the hospital.  (Emphasis ours).

Docket No. 14-4.

Plaintiff further alleges that her position of general supervisory registered nurse was assigned to Lisa Rivera, a younger nurse, who was being trained to a supervisory position by plaintiff prior to her demotion and resignation.  *See Report and Recommendation*, Docket No. 33, pages 4-5.

### The American with Disabilities Act

The Court agrees with the legal analysis made by the Magistrate Judge as to the ADA, and incorporates the same herein:

>Title I of the Americans with Disabilities Act ("the ADA") prohibits employers from discriminating against persons with disabilities. 42 U.S.C. § 12112(a). To establish an ADA claim, a person must prove: (1) that she was "disabled within the meaning of the ADA"; (2) that she was "qualified to perform the essential functions fo the job, either with or without a reasonable accommodation"; and (3) "that the employer took adverse action against" the employee "because of the disability." *Bailey v. Ga.-Pac. Corp.*, 306 F.3d 1162, 1166 (1st Cir.2002).  An ADA plaintiff has several options for showing that she is disabled under the ADA; here, Plaintiff has opted to argue that she is disabled under the ADA because she was "regarded as having" an impairment that substantially limited one or more of her major life activities.

> *See Ruiz-Rivera v. Pfizer Pharmaceuticals, LLC*, 521 F.3d 76, 82–83 (1st Cir. 2008).
>
> "Regarded as" claims under the ADA are meant to protect plaintiffs from "myths, fears, and stereotypes" that may arise regarding their non-disabling medical conditions. *See id.* at 82. To prevail under this test, the plaintiff must show not only that her employer "perceived h[er] as somehow disabled," but that "the employer regarded h[er] as disabled within the meaning of the ADA." *Id.* at 83 (citing *Bailey*, 306 F.3d at 1169). Plaintiff "must demonstrate not only that the employer thought [she] was impaired in [her] ability to do the job that [she] held, but also that the employer regarded h[er] as substantially impaired 'in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities.'" *Sullivan v. Neiman Marcus Grp., Inc.*, 358 F.3d 110, 117 (1st Cir.2004) (quoting *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999)).
>
> Almost nothing in the statements of facts addresses how Plaintiff was perceived by her employer. The following, however, is undisputed: Plaintiff was never subjected to any comments about any perceived disability, and she admitted during her deposition that she was not perceived or treated as disabled. All Plaintiff has to hang her "regarded as" argument on is the fact that she told the hospital's human resources department that she was going to have thyroid surgery, and that this surgery could cause muteness. It is the muteness that Plaintiff claims led to her being regarded as disabled, but there are two salient facts that make her argument implausible: first, it is uncontested that Plaintiff was demoted before the surgery, and she never returned to work after it was performed; and second, she does not even allege that she told the hospital that muteness was a possible consequence of the surgery.
>
> It is our opinion that Plaintiff's "regarded as" claim under the ADA must fail because she was at no time working with any condition that could have been regarded by her employer as a disability under the Act. To the contrary, it is uncontested that Plaintiff ceased to work at the hospital before undergoing the surgery that she says led to the perception of disability. We cannot understand, then, how such a perception might have been formed. Thus, we recommend that the motion for summary judgment be granted with regard to her ADA claim.

*See Report and Recommendation*, Docket No. 33, pages 7-10. *See also Ramos-Echevarría v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir.2011):

>In assessing whether someone is disabled under the ADA, we must consider the impairment's effect on the particular individual. *Katz v. City Metal Co.*, 87 F.3d 26, 32 (1st Cir.1996). The limitation caused by the impairment must be permanent or long-term. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002); *see also* 29 C.F.R. § 1630.2(j)(2)(ii), (iii) (1991). Evidence of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability. *See Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 198. What is required is evidence showing that the impairment limits this particular plaintiff to a substantial extent. *See Carroll v. Xerox Corp.*, 294 F.3d 231, 238 (1st Cir.2002) (quoting *Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 196-200) (internal quotations marks omitted).

In the instant case, the Court finds that the record is devoid of any supporting documents regarding plaintiff's thyroid condition. The record is plagued with plaintiff's bare, general conclusory allegations, which indeed are in itself contradictory with plaintiff's own statements given in her deposition.

>Question: How many tests did you have prior to the surgery?
>
>Answer: Only the biopsy.
>
>Question: What activities are you precluded from performing due to this medical condition that your mentioned that Dr. Giraldes identified?
>
>Answer: None.
>
>Question: How did this condition affect your ability to work?
>
>Answer: In no way.
>
>Question: Is there something that you used [to do] that you cannot perform now?
>
>Answer: No.
>
>Question: Are there any limitations imposed on you by this condition that you undergo surgery for?

Answer:     No.

Question:   Was this a temporary or permanent condition?

Answer:     Permanent.

. . .

Question:   Did you consult any other doctor, besides Dr. Giraldes, for this condition?

Answer:     No.

Question:   Did you request leave under SINOT at San Juan Capestrano?

Answer:     No.

Question:   Were you dismissed from work at San Juan Capestrano?

Answer:     No.

Question:   At the time that you handed your resignation to San Juan Capestrano, were you authorized to work from your doctor?

Answer:     Yes.

*See* Docket No. 11-2, pages 17-18.

Question:   Did you ever request a reasonable accommodation at San Juan Capestrano due to this condition that you're claiming [possibility of muteness for a period of three months after the thyroid surgery, and end up hoarse]?

Answer:     No, but they indicated to me that I was going to be rotated."

*Id.* at page 19.

Question:   Were you ever perceived or treated as disabled by someone at San Juan Capestrano?

Answer:     No.

| | |
|---|---|
| Question: | Before undergoing surgery, did you ever report to San Juan Capestrano on medical leave? |
| Answer: | Yes. |
| Question: | Were you subject to any disciplinary action, or a comment because you went on sick leave? |
| Answer: | No. |
| Question: | Did you ever report to Workmen's Compensation? |
| Answer: | Yes. |
| Question: | Were you reinstated in your job after you were released from Workmen's Compensation? |
| Answer: | Yes. |
| Question: | Were you subjected to any remarks, or comments, or disciplinary action because you reported yourself to Workmen's Compensation? |
| Answer: | No. |

*Id.* at page 20.

Plaintiff also admitted never hearing comments regarding her disability, or that someone perceived or treated her as disabled. *See Report and Recommendation*, Docket No. 33, page 5.

The Court notes that there are no medical certificates or diagnosis on the record regarding plaintiff's thyroid condition. Hence, the Court finds that the plaintiff failed to show that indeed she had a disability either by direct evidence or by indirect evidence using the prima facie case test as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

**The Age Discrimination in Employment Act**

Plaintiff Santiago alleges that she was discriminated against due to her age. *See Report and Recommendation*, Docket No. 33, pages 5-6. However, the Court finds that according to plaintiff's deposition, she did not feel discriminated against due to her age.

Likewise, the Court agrees with the legal analysis made by the Magistrate Judge as to the ADA, and incorporates the same herein:

> The Age Discrimination in Employment Act prohibits employers from taking adverse employment actions against employees who are forty years of age or older because of the employee's age. *Bennett v. Saint-Gobain Corp.*, 507 F.3d 23, 30 (1st Cir.2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). To prevail on her ADEA claim, Plaintiff must prove that she suffered an adverse employment action that was motivated by her age, and that she suffered an injury as a result. *Mélendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc.*, 273 F.3d 30, 33 (1st Cir.2001). Here, Plaintiff was over forty years old and was replaced, in at least some of her responsibilities, by a person younger than her.
>
> In this case, the central question is whether Plaintiff's demotion was motivated by age discrimination. Plaintiff alleges that her age triggered her demotion; the hospital argues that Plaintiff's demotion was precipitated by errors she made on the job. At the summary judgment state, the relevant question is whether Plaintiff "has pointed to enough admissible evidence to create a factual issue for trial on the issue of motivation—that is, to permit a reasonable jury to conclude that the decision to demote her was taken or prompted by someone based on age-based stereotyping or hostility." *Id.; see also Dávila v. Corporación de P.R. para la Difusión Pública*, 498 F.3d 9, 16 (1st Cir.2007) ("At summary judgment, this question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age.").
>
> Plaintiff has adduced no evidence supporting discrimination apart from the mere facts of her age and that of her supposed replacement. She admits that she heard no comments directed at her age and that other, older employees worked around her. More relevantly, her resignation letter from her position takes some responsibility for the errors in judgment that the hospital says led to her demotion. Simply put, we do not think there is enough here to permit a reasonable factfinder to conclude that Plaintiff suffered age discrimination.

> *See Dávila*, 498 F.3d at 17 ("For a quondam employee to withstand summary judgment in an age discrimination case, there must be some significantly probative evidence from which the factfinder can infer that the employer discharged the employee because of his age."). Accordingly, we must recommend that the motion for summary judgment be granted with regard to her ADEA claim.

Plaintiff further alleges that she was discriminated against due to her age. *See Report and Recommendation*, Docket No. 33, pages 5-6. However, the Court finds that according to plaintiff's deposition, she did not feel discriminated against due to her age.

> Question:   Did someone at Capestrano ever made a comment to you that you were old?
>
> Answer:   No.
>
> Question:   Did you ever contact him [the director of human resources] to report any conduct or any situation regarding these comments?
>
> Answer:   No.
>
> Question:   Did you ever try to reach Mr. Rivera [the director of human resources], and he refused to listen to you?
>
> Answer:   No.

*See* Docket No. 11-2, page 8.

In the instant case, there is not one single allegation of age discrimination supported by plaintiff's own admissions. The record clearly shows otherwise, to wit: (a) plaintiff was hired when she was 45 years old; (b) plaintiff is a registered nurse with post-graduate studies, and is currently studying a doctoral degree; (c) plaintiff was unable to establish that her demotion was age related, hence, she failed to meet the "but for" test, required by the Supreme Court in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) (requiring that the termination must be "the motivating factor"

instead of "a motivating factor"). In sum, the Court finds that summary judgment is warranted on plaintiff's ADEA claim.

## Constructive Discharge

Plaintiff claims constructive discharge due to her demotion. "Constructive discharge typically 'refers to harassment so severe and oppressive that staying on the job while seeking redress – the rule save in exceptional circumstances – is intolerable.'" *Gerald v. University of Puerto Rico*, 707 F.3d 7, 25 (1st Cir.2013), citing *Lee-Crespo v. Schering-Plough Del Caribe, Inc.*, 354 f.3d 34, 45 (1st Cir.2003) (internal quotations and citation omitted). "A successful constructive discharge claim requires 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Id.*, citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

In the instant case, the record clearly shows otherwise. Plaintiff stated in her deposition that she presented her resignation under pressure, even though she was not asked by the administration to resign. *See* Docket No. 11-2, page 15. Moreover, plaintiff admitted that she did not return to work after the surgery, notwithstanding that she had a job at the hospital, and her doctor allowed her to return to work and perform as usual. *See* Docket No. 11-2, pages 16-18. Hence, plaintiff could not have suffered "severe and oppressive" working conditions while she was away on sick leave. *Gerald v. University of Puerto Rico*, 707 F.3d at 25. Lastly, plaintiff admitted that she was not dismissed from work at San Juan Capestrano. *Id.* Contrariwise, plaintiff sent a resignation apologetic letter admitting that she had in fact provided "unauthorized employees" [the per diem nurse, who was also an employee of the Government of Puerto Rico] to receive flu vaccinations. *See* Letter of Resignation, Docket No. 14-4. Plaintiff further admitted that she forgot to make the proper entry on the "shift report." *Id.* The record reflects that the defendant was a "general

supervisory nurse" with a license to act as a registered nurse, occasionally acting as the registered nurse in charge of the hospital. *See Report and Recommendation*, Docket No. 33, page 2.

Considering that plaintiff was never terminated but only demoted, and never returned to work after surgery, notwithstanding she was capable and authorized by her physician to work, the Court refuses to act as a super overseeing personnel office. The Court remains mindful that its role is not to "second-guess[ing] the business decisions of an employer, nor to impose [its] subjective judgments of which person would best fulfill the responsibilities of a certain job." *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990). "Courts may not sit as super personnel departments, assessing the merits – or even the rationality – of employer's nondiscriminatory business decisions." *Mesnick v. General Electric Co.*, 950 F.2d 816, 823 (1st Cir. 1991).

> Question: Were you dismissed from work at San Juan Capestrano?
>
> Answer: No.
>
> Question: At the time you handed your resignation to San Juan Capestrano, were you authorized to work from your [personal] doctor?
>
> Answer: Yes.

*See* Docket No. 11-2, page 18.

Hence, the Court finds that plaintiff was not constructively discharged, rather that she resigned knowingly and voluntarily without any "sever and oppressive" conditions present. *Gerald v. University of Puerto Rico*, 707 F.3d at 25. The record also shows that another supervisor resigned from Capestrano, however, plaintiff could not provide the name of said supervisor and the circumstances that triggered the supervisor's alleged resignation. *See* Docket No. 11-2, page 21. The Court finds that this bare allegation is irrelevant, as it fails to prove any type of discrimination

conduct from the defendant, or how this resignation is related, if any, to plaintiff's resignation.

Plaintiff's claim for constructive discharge is denied, as she failed to show that her working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Gerald v. University of Puerto Rico*, 707 F.3d at 25.  Hence, summary judgment is warranted as to the claim of constructive discharge.

## Conclusion

For the reasons stated above, the Court finds that there is no plain error in the Magistrate Judge's *Report and Recommendation*, Docket No. 33.  Hence, the *Report and Recommendation* is hereby adopted *in toto*, as supplemented herein.  All federal causes of action are dismissed with prejudice and all causes of action under state law are dismissed without prejudice.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 11th day of April, 2013.

>                             s/Daniel R. Domínguez
>                             DANIEL R. DOMINGUEZ
>                             United States District Judge